644 A.2d 759

**COMMONWEALTH of Pennsylvania**

v.

**Monty BIRCH, Appellant.**

Superior Court of Pennsylvania.

Argued March 15, 1994.

Filed July 7, 1994.

576

Stanley W. Greenfield, Pittsburgh, for appellant.

Sandra Preuhs, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before WIEAND, DEL SOLE and FORD ELLIOTT, JJ.

DEL SOLE, Judge.

Monty Birch appeals from the judgment of sentence entered following a jury conviction of Recklessly Endangering Another Person. 18 Pa.C.S.A. § 2705. Appellant was sentenced to two years probation, 200 hours of community service and a $2,000 fine was imposed. We reverse and remand.

Appellant was originally charged with one count of Aggravated Assault (18 Pa.C.S.A. § 2702(a)(4)) and one count of Recklessly Endangering Another Person, and his first trial by jury ended in a mistrial. At his second trial, he was convicted

of Reckless Endangering Another Person and acquitted of Aggravated Assault. This conviction was affirmed by this court but the supreme court reversed and remanded the case for a new trial. *Commonwealth v. Birch,* 532 Pa. 563, 616 A.2d 977 (1992). This third trial resulted in the conviction which is on appeal.

Christian Davis testified that he and Anthony Price were attempting to steal appellant's car. Davis stated that he broke the car window with a screwdriver and began opening the door when he heard someone yell "hey". Price was already running and Davis started to run, was shot in the hip, fell and shattered his femur.

Appellant testified that he was checking the locks on his doors when he noticed someone leaning on his automobile. He decided to investigate and proceeded from the back door of his home carrying a pistol. He had a licence to carry a firearm. He approached the two men near his car, coming within seven feet, and yelled "hey." He stated that one of the men held a shiny metallic object in his hand. He described the man as doing a fast turn at the same time the other man emerged from the opposite side of the car. As the two men started heading directly toward him, appellant pulled his gun and fired the shot which struck Christian Davis. Appellant testified that the men ran by him, and that he was frightened and ran back to his house. The shiny metal object was later found and was a screwdriver.

The sole issue on appeal is whether the trial court erred by instructing the jury on the legal rights and duties of an owner in protecting one's property with force (18 Pa.C.S.A. § 507). The defendant contends he did not advance the defense that he was entitled to use lethal force to protect his property. Rather he claims his use of lethal force was in order to protect his person (18 Pa.C.S.A. § 505) in the belief that he was threatened with serious bodily harm. This defense was also presented to the jury in the court's charge.

We begin our analysis by noting:

In questions concerning jury instructions, in determining whether the trial judge committed an abuse of discretion or error of law, we consider the charge as a whole in light of the evidence presented. *Papandrea v. Hartman,* 352 Pa.Super. 163, 507 A.2d 822 (1986). If error is found to have been committed, a new trial is warranted only where such error has been clearly prejudicial to appellant. *Commonwealth v. Tharp,* 373 Pa.Super. 285, 541 A.2d 14 (1988).

*Commonwealth v. McCauley,* 403 Pa.Super. 262, 277–278, 588 A.2d 941 (1991).

Defense counsel objected to the trial court's charge on justification for using force in the protection of property claiming the defense did not advance a theory that appellant shot to protect his automobile, but that the shooting was justified in defense of his person. Appellant asserts that by instructing the jury on a justification defense for the protection of property, it was a foregone conclusion that he would be convicted because he presented no evidence establishing the elements of that defense.

The Commonwealth argues that the instruction was properly given because defense counsel, in both opening and closing arguments, made statements to the effect that appellant was entitled to protect his property. For instance, in opening statements, defense counsel commented:

Now, ladies and gentlemen, ... the question is, may a homeowner, otherwise totally responsible with no criminal record of any kind, seek to protect his property? And if so and in seeking to protect it and investigating what it is that is happening to his property, may that owner arm himself and protect himself when he believes he is confronted with a danger to his own person? In short, may that owner respond by using force when he believes that he himself is in danger, having gone to investigate the property that is his right to, in fact, investigate?

Trial transcript 3–3–93 at 27–28. Defense counsel, then asked the jurors, "[d]id he have a right to go out there with a gun that day or go out at all to investigate?" (Trial Transcript 3–

3–93 at 28). During the discussion on points for charge, the prosecuting attorney expressed concern that defense counsel's opening statements may have confused the jury regarding individuals' right to use lethal force to protect their cars. The trial court initially responded that the case was not about defense of property. However, when defense counsel made it known to the court that he was going to make the argument that a homeowner has the right to investigate threats to one's property, the court decided to charge on defense of property.

In closing arguments, defense counsel made the following statements:

Ladies and gentlemen, ... Does a homeowner have a right, under the law, to investigate whatever it is that causes him to suspect that his property is being invaded or, in fact, subject to some act of impropriety; and two, if he, in fact, approaches the circumstances where he places himself in danger, can he respond by using dangerous force under the circumstances?

Trial transcript 3–3–93 at 46–47.

Now, the prosecution must prove—the defense doesn't have to prove anything, but we have accepted the challenge anyway. The prosecution must prove to you that on this particular night, Monty Birch acted recklessly and endangered this man, Davis, who was burglarizing his car, or attempting to steal his car, and acted in violation of this statute that I've already read to you, and he did so without justification and without any personal basis for really fearing that his life was in danger and that therefore under the law he had no right to shoot.

Trial transcript 3–3–93 at 55–56.

Now, ladies and gentlemen this is not a negligence case. This is not one of those things where Monty Birch may have acted in a way that you didn't like or he acted a little bit irresponsibly because he pulled a gun or he went down with a gun in the first place where you probably would have run

up in your house, called the police, and hid under the bed or some such thing.

Trial transcript 3–3–93 at 56.

The first question I said you have to answer is, does somebody have a right to go investigate what their property is and where it is and what's happening to it? You bet your life that they do under the law. Does somebody have a right to go down with a weapon that they have a license for? You bet your life that they do. Do they have a right to use it if they are personally in danger under the circumstances in their subjective belief? And the answer is, you bet your life that they do.

Trial transcript 3–3–93 at 70–71.

The trial court, denying appellant's post-trial motions, reasoned that the use of force in protection of property charge was warranted based on the evidence that the victim, Christian Davis, was in the process of breaking into the appellant's car, when the defendant left his home to investigate. The court noted that "the [d]efendant, as indicated by counsel, may not have affirmatively posited defense of property in the case, however the facts give rise to its consideration and justify the instruction for the jury's deliberation." (Trial court op. 8–17–93 at 8).

In support of their contentions, both appellant and the Commonwealth cite *Commonwealth v. Young*, 271 Pa.Super. 59, 412 A.2d 159 (1979). There the defendant was found guilty of voluntary manslaughter and a violation of the Uniform Firearms Act. The issue was whether the trial court committed reversible error by refusing to give a written instruction requested by defendant which would have advised the jury that in exercising his right to eject the victim, the defendant was "without fault in provoking the controversy within the meaning of the first element of self-defense." The Defendant testified that he owned a lot which was posted with a "No trespassing" sign. He received a telephone call informing him that someone was on the lot. Defendant went to the property and found a man and a woman in a parked car. He asked

several times for them to leave but the man refused and a fight ensued. Defendant testified that he caught the man on his property on prior occasions, once stealing gas and once threatening to kill defendant for refusing to provide a towing device. On this night defendant stated the man threatened to take his prosthetic leg and beat him with it. According to defendant, when they began scuffling, he was hit on the head knocking him backward and off balance; because he feared that the man would incapacitate him by removing his prosthesis, he pulled a gun and fired at his protagonist, killing the victim.

In *Young,* the trial judge refused the defendant's written request and an oral request to instruct the jury that "if you find that the defendant was a licensee of the premises, then you must find that he had a right to eject the trespasser and that he would therefore be without fault in provoking the confrontation within the meaning of the first element of self-defense." *Id.* 271 Pa.Super. 59, 412 A.2d at 162. On appeal, we noted that the trial court adequately instructed the jury on the defense of self-defense and that in order for one to take advantage of that defense a person could not provoke the incident. The court also instructed the jury regarding the right of a licensee to use reasonable, non-lethal force to terminate a trespass. However, we determined that immediately following the instruction on non-lethal force to terminate a trespass the trial court erred by remarking: "Now this has nothing to do, of course, with protection of self. This is on protection of property. Otherwise, the use of deadly force in the protection of property would be justified."

We reasoned that the trial court's last statement produced incongruity between the sections of the Code governing self-defense and use of force to protect property, sections 505 and 507 respectively. We elaborated that under § 507, a licensee may exercise reasonable force against a trespasser, however, the use of such force would make the licensee a provoker which would deprive him of the defense of self-defense under the former section. For guidance on the relationship between

self-defense and defense of property, we referred to a text on criminal law which provides:

> Of course, if the defender's reasonable force in protection of his property is met with an attack upon his person, he may then respond by defending himself and then *may be* entitled to use force.

> W. LaFave and A. Scott, Handbook on Criminal Law, § 55, at 400 (1972) (emphasis added and footnote omitted).

*Young,* 412 A.2d 159, 162. We concluded that the trial court committed reversible error by failing to charge that defendant's initial use of reasonable force, if it met the elements on the use of force to protect property under § 507, would not automatically make the defendant a "provoker" for purposes of the defense of self-defense.

In the instant case, while we agree that it was appropriate for the trial court to instruct the jury on the use of force for the protection of property since defense counsel argued that appellant was entitled to investigate the possible threat to his property, we must nevertheless reverse the judgment of sentence and remand for a new trial based upon our analysis in *Young, supra.* The trial court is required to instruct the jury in order to clarify the issues so that they understand the questions involved. The court must also instruct on the law applicable to the issues which arise out of the evidence and the arguments presented. *See Commonwealth v. Mayfield,* (*en banc*), 401 Pa.Super. 560, 585 A.2d 1069 (1991). However, the trial court here failed to reconcile the jury instructions on self-defense and the use of force in protection of property. As we stated in *Young,* even though a property owner may be permitted to use reasonable, non-lethal force in the protection of property, the use of such force does not then deprive that person of the defense of self-defense. Here the trial court's failure to provide the jury with an instruction harmonizing the defense of use of force to protect property and self-defense was reversible error.

The judgment of sentence is reversed and the case remanded for a new trial.