657 A.2d 40

**COMMONWEALTH of Pennsylvania**

v.

**Leonard SOTO, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 2, 1994.

Filed April 17, 1995.

Michael F. Medway, Philadelphia, for appellant.

Laurie Magid, Asst. Dist. Atty., Philadelphia, for Com.

Before OLSZEWSKI, DEL SOLE and BECK, JJ.

PER CURIAM:

Judgment of sentence affirmed in part and vacated in part. Jurisdiction relinquished.

OLSZEWSKI, J., filed a concurring opinion.

OLSZEWSKI, Judge, concurring.

If a homicide defendant raises the theory of self-defense, the Commonwealth must disprove that theory beyond a reasonable doubt. *Commonwealth v. Samuel*, 527 Pa. 298, 302–03, 590 A.2d 1245, 1247 (1991); *Commonwealth v. Carbone*, 524 Pa. 551, 560–62, 574 A.2d 584, 589 (1990); *Commonwealth v. Hill*, 427 Pa.Super. 440, 443–45, 629 A.2d 949, 951 (1993). This can be done by proving any one of the following: 1) defendant did not reasonably believe both that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force to prevent such harm; 2) defendant was not free from fault in provoking the difficulty which culminated in the killing; or 3) defendant violated a duty to retreat. *Id.; Commonwealth v. Gonzales*, 415 Pa.Super. 564, 568–70, 609 A.2d 1368, 1370 (1992). On the facts of the present case, the trial court and the majority found that the Commonwealth sufficiently disproved self-defense. After careful review, I reluctantly concur with the majority that the Commonwealth has met its burden. I feel it necessary, however, to explain my hesitancy to affirm in light of the circumstances of this case.

The trial court found that Soto's beliefs regarding the danger at issue and the necessity of using deadly force were unreasonable. In examining a defendant's belief about the need to use deadly force in self-defense, a court must consider both a subjective and an objective component. *Hill*, 427 Pa.Super. at 445–47, 629 A.2d at 952. "First, the defendant must have acted out of an honest, bona fide belief that he was in imminent danger. Second, the belief must be reasonable in light of the facts as they appeared to him. The first element is entirely subjective; the second element is entirely objective." *Id.* It is the second, objective element that the trial court found lacking in this case. Opinion, 3/18/94 at 3.

A number of factors are relevant when determining the reasonableness of defendant's belief that the use of deadly force was necessary in order to protect himself from death or serious bodily injury. Among the factors that have been considered in prior cases are whether the decedent was

armed, the existence of actual physical contact, size and strength disparities between the parties, prior dealings between the parties, threatening or menacing actions on the part of the decedent, and general circumstances surrounding the incident. *E.g., Commonwealth v. Eberle*, 474 Pa. 548, 555–57, 379 A.2d 90, 94 (1977); *Commonwealth v. Light*, 458 Pa. 328, 335–36, 326 A.2d 288, 293 (1974); *Commonwealth v. Grove*, 363 Pa.Super. 328, 335–37, 526 A.2d 369, 373 (1987), *appeal denied*, 517 Pa. 630, 539 A.2d 810 (1987).

Evidence indicating that the decedent was unarmed does not require a per se finding of unreasonable belief. *See Commonwealth v. Watson*, 494 Pa. 467, 472–74, 431 A.2d 949, 952 (1981); *Eberle*, 474 Pa. at 555–57, 379 A.2d at 94; *Grove*, 363 Pa.Super. at 335–37, 526 A.2d at 373; *Commonwealth v. Zenyuh*, 307 Pa.Super. 253, 256–58, 453 A.2d 338, 340 (1982). *But see Commonwealth v. McClain*, 402 Pa.Super. 636, 641–45, 587 A.2d 798, 801–02 (1991), *appeal denied*, 528 Pa. 636, 598 A.2d 993 (1991) (implying the existence of a per se rule by finding defendant's belief unreasonable after simply noting that the decedent was unarmed). An individual does not need a weapon to inflict death or serious bodily injury upon another person. There are countless ways to use one's natural "weapons", such as hands and feet, to severely injure or kill. Thus, it may be entirely reasonable to fear death or serious bodily injury at the hands of an unarmed attacker. Depending upon the circumstances, it may also be entirely reasonable for a defendant to believe that he must use deadly force to save himself from such danger. Therefore, I do not subscribe to the view that any one factor can require an automatic finding of unreasonableness. All of the factors that would be considered by a reasonable person in the defendant's situation must be taken into account.

When we, as judges, consider these factors, we must also remember that the defendant did not have the opportunity, as we now do, to sit and carefully reflect on the reasonableness of a given course of action. Rather, defendant had to weigh and evaluate these factors and make a split-second decision in the middle of an explosive and highly charged situation. As

Justice Oliver Wendell Holmes, Jr. noted, "the law does not require detached reflection in the presence of an upraised knife." *Brown v. United States,* 256 U.S. 335, 343, 41 S.Ct. 501, 502, 65 L.Ed. 961, 963 (1921). *See also Grove,* 363 Pa.Super. at 335–37, 526 A.2d at 373 (citing above passage from *Brown*). Therefore, a court must be careful not to examine the reasonableness of a defendant's belief with the 20/20 clarity of hindsight. The inquiry must be what a reasonable person in the defendant's situation would have believed at the time.

In this case, the trial court found the following facts: The decedent, Duamel Santiago, drove his car onto the sidewalk and up to the steps of appellant Soto's house. As Santiago began screaming obscenities, Soto opened his bedroom window and hollered at Santiago to pull the car back. Santiago then threatened Soto and his wife, continued to holler obscenities, and began to smash the windows of his own car. This prompted Soto to go downstairs, retrieve a gun, and open the front door. As Soto opened the door, Santiago continued to scream threats at Soto and his wife and started to advance upon Soto. Soto backed up into his house and fired one shot at Santiago, who had advanced onto the steps in front of the house. Santiago was drunk and unarmed at the time.

While it is true, as the trial court notes, that Santiago was unarmed, I do not find this factor to be dispositive. Santiago had crashed his car in front of Soto's house, threatened Soto and his wife, thrown a violent tantrum on his own car, and advanced upon an armed Soto standing in the doorway of his own home. This combination of verbal threats, violent displays, and a sudden menacing advancement toward Soto's house could give rise to a reasonable fear of death or serious bodily injury. *See Eberle,* 474 Pa. at 555–57, 379 A.2d at 94 (finding reasonable belief where defendant shot unarmed decedent who entered defendant's apartment drunk and uninvited, smashed and tore down bookshelves, and then lunged at defendant).

In addition to a reasonable fear of death or serious bodily injury, Soto must also have had a reasonable belief that it was

necessary to kill to avoid the harm. On this point, the trial court noted that Soto could have simply "shut the door." Opinion, 3/18/94 at 3. I am not as convinced as the trial court, however, that a reasonable person would have believed that safety could be achieved merely by shutting the door.

In its statement of the facts, the trial court indicated that Santiago was on the front steps leading to Soto's door at the time of the shooting. *Id.* Since testimony established that the end of the top step was two feet from the door, and that there were only three steps leading up to the door, it is evident that Soto and Santiago were not far apart when the shooting occurred. N.T. 12/15/93 at 10–14. Moreover, evidence introduced at trial indicated that the gunshot wound was inflicted at close range. The County Medical Examiner's report put the distance between Santiago and the end of the gun at six inches to two feet. Medical Examiner's Postmortem Report, Exhibit C–17 at 3. This also indicates that Santiago was very close to Soto at the time of the shooting. In such a case, I am not as certain as the trial court that a reasonable person, making a split-second decision, would believe that the door could be shut in time. Therefore, I do not believe that the Commonwealth has proven beyond a reasonable doubt that Soto was unreasonable in believing that he needed to use deadly force to save himself from death or serious bodily injury.

The trial court also implied that Soto violated a duty to retreat. An individual does not have a duty to retreat in his or her own dwelling, even if such retreat could be safely accomplished. 18 Pa.C.S.A. § 505(b)(2)(ii)(A); *Eberle,* 474 Pa. at 555–57, 379 A.2d at 94; *Commonwealth v. Ehrsam,* 355 Pa.Super. 40, 57–59, 512 A.2d 1199, 1208 (1986), *appeal denied,* 515 Pa. 573, 527 A.2d 535 (1987), *cert. denied,* 493 U.S. 932, 110 S.Ct. 321, 107 L.Ed.2d 311 (1989), *habeas corpus denied,* 917 F.2d 764 (3d Cir.1990), *rehearing denied, cert. denied,* 499 U.S. 926, 111 S.Ct. 1324, 113 L.Ed.2d 257 (1991). In its statement of the facts, the trial court indicated that Soto, who had initially been standing in his doorway, "backed up **into his house** and fired one shot." Opinion, 3/18/94 at 1

(emphasis added). Since Soto was inside his home, he had no duty to retreat any further. Moreover, Soto did not violate any duty by failing to close the door after he retreated into the house. The law is clear that once an individual is in his dwelling, he need not retreat any further, even if it could be done safely. Once Soto stood inside his house, he was entitled to stand his ground and repel any attacking force.[1]

This determination that Soto did not have a duty to retreat is not altered by the fact that the danger threatening Soto was outside of the house. The statutory language regarding the duty to retreat states that "the actor is not obliged to retreat from his dwelling." 18 Pa.C.S.A. § 505(b)(2)(ii)(A). This language illustrates that it is the actor's placement that is relevant, not the danger's location. So long as defendant is in his home, he has no duty to retreat from imminent danger, regardless of whether the danger is in the home with him or outside. *See State v. Bonano,* 59 N.J. 515, 284 A.2d 345 (1971) (finding no duty to retreat where defendant standing at the threshold of his home shot an assailant coming up the front porch steps). *Cf. Commonwealth v. Hunter,* 381 Pa.Super. 606, 614–16, 554 A.2d 550, 554 (1989) (finding a violation of a duty to retreat where defendant chose to go outside to confront danger).[2]

Lastly, I must address the provocation issue, which the trial court in this case did not address. The concept of provocation

1. Even though there is no violation of a duty to retreat for failing to close the door, there could be a violation of the reasonable belief requirement if the evidence clearly showed that the door could have been closed safely. As discussed earlier, there is no such evidence in the instant case.

2. Once again, this determination on the issue of a duty to retreat does not dispense with the requirement of a reasonable belief that deadly force is necessary to avoid death or serious bodily injury. If an outside danger does not reasonably pose a threat of death or serious bodily injury, or if it is not reasonable for a defendant in his home to believe it is necessary to kill an outside attacker to avoid death or serious bodily injury, then a defendant will not be allowed to avail himself of the justification of self-defense. *See Commonwealth v. Harris,* 444 Pa. 515, 516–17, 281 A.2d 879, 880 (1971) (rejecting claim of self-defense for defendant who shot milkman through closed front door after hearing a noise; the basis for the decision regarding this outside danger was defendant's unreasonable belief, not any violation of a duty to retreat).

is not one that can be set out in a concise, easy-to-apply rule. Generally, an individual is not entitled to claim self-defense unless he or she is free from fault in provoking or continuing the difficulty which culminated in the slaying. *E.g., Samuel,* 527 Pa. at 302–03, 590 A.2d at 1247; *Commonwealth v. Butler,* 516 Pa. 522, 524–26, 533 A.2d 992, 993 (1987). In *Samuel,* our Supreme Court applied the statutory language in 18 Pa.C.S.A. § 505(b)(2)(i) and stated that a defendant is free from fault unless he or she provokes or continues a conflict with the intent of causing death or serious bodily injury. 527 Pa. at 302–03, 590 A.2d at 1247. This standard requires more than simple provocation before a party loses the right to self-defense. It seems to take away the right of self-defense only if a defendant: a) provoked or continued the conflict; and b) did so with the plan, hope, knowledge, or reasonable suspicion that death or serious bodily injury would result.

Applying this standard to the instant case, I must conclude that Soto impermissibly provoked and/or continued the altercation of October 23, 1991. After hearing the crash in front of his house, Soto was quickly able to determine its cause and to appraise himself of the possible risks to his family and his home. Notwithstanding the fact that Santiago was not attempting to gain entry to Soto's home, Soto felt it necessary to arm himself,[3] open his front door, and confront the problem. While the law does not require individuals to cower inside their homes, it does require reasonable and measured reactions. The appropriate reaction in this case would have been to call the police. By arming himself and going to the door to join the fracas, Soto further provoked and continued an unnecessary conflict, and he did so with at least a reasonable suspicion that the situation would escalate to the point where death or serious bodily injury would likely result. *See Commonwealth v. Bayard,* 453 Pa. 506, 510–12, 309 A.2d 579, 582

---

**3.** The fact that Soto was the first to introduce a weapon into the situation does not automatically mean that he is guilty of provocation. *Samuel,* 527 Pa. at 302–03, 590 A.2d at 1247. It is the circumstances under which the weapon is produced and the manner in which it is handled that determines whether the act is impermissibly provocative. *Id.*

(1973) (charging defendant with impermissible provocation where defendant left the safety of a carnival to meet rivals in an alley in order to participate in a gang fight); *Commonwealth v. Walker,* 447 Pa. 146, 148–50, 288 A.2d 741, 743 (1972) (finding impermissible provocation and continuation where defendant was not the initial aggressor, but armed himself after the initial confrontation was over and returned to shoot the original aggressor); *Commonwealth v. Minoff,* 363 Pa. 287, 291–93, 69 A.2d 145, 148 (1949) (denying self-defense where defendant acted voluntarily to join a quarrel, and stating that "[t]he situation in which he thereafter found himself was of his own choice and making; and he is criminally responsible for the consequences of his conduct."); *Commonwealth v. Correa,* 437 Pa.Super. 1, 3, 648 A.2d 1199, 1203 (1994) (finding impermissible provocation where defendant taunted decedent from safety and then armed himself, went to common area of apartment, opened locked door, and confronted decedent); *Commonwealth v. Jones,* 231 Pa.Super. 300, 302–06, 332 A.2d 464, 466 (1974) (finding impermissible provocation where defendant armed himself and left his home to confront angry youths who were throwing stones and other items at his house).

Ultimately, the issue of the defendant's role in the events leading up to the slaying boils down to a question of reasonableness, which allows courts to consider all of the events surrounding the homicide, and to assign the role of aggressor to the proper party at the proper time. In this case, it was simply unreasonable under all of the circumstances for Soto to arm himself, open his door, and confront Santiago.[4]

This case presented a number of "close calls" and highlighted the competing interests in self-defense cases. The essence

4. Since Santiago was on a public sidewalk after the crash, Soto cannot defend his initial response as a reasonable defense of property. *Cf. Commonwealth v. Johnston,* 438 Pa. 485, 488–90, 263 A.2d 376, 379 (1970) (holding that a homeowner or business owner does not become a provoker by simply exercising his or her legal rights to remove trespassers from the property); *Commonwealth v. Birch,* 434 Pa.Super. 575, 580–582, 644 A.2d 759, 762 (1994) (same); *Commonwealth v. Young,* 271 Pa.Super. 59, 64–65, 412 A.2d 159, 162 (1979) (same).

of self-defense is that at some point, the party being assailed reaches the belief that "it's him or me." Before this Court will sanction that belief, we ask a number of questions designed to foreclose the ability to resort to deadly force too soon, while still protecting the ability to act before it is too late. This is no simple task.

This already difficult task becomes more so when additional social concerns are added to the mix. One such concern is the sanctity of a person's home. People have the right to expect safety and security within the confines of their home and the law of self-defense must recognize this right. The United States Supreme Court, quoting from the English common law, wrote:

> That the house of every one is to him as his castle and fortress, as well for his defence against injury and violence, as for his repose; and although the life of a man is a thing precious and favoured in law; so that although a man kills another in his defence, or kills one per infortun', without any intent, yet it is felony, and in such case he shall forfeit his goods and chattels, for the great regard which the law has to a man's life; but if thieves come to a man's house to rob him, or murder, and the owner of [sic?] his servants kill any of the thieves in defence of himself and his house, it is not felony, and he shall lose nothing, and therewith agree 3 E 3. Coron 303, & 305, & 26 Ass pl 23. So it is held in 21 H 7. 39. every one may assemble his friends and neighbours to defend his house against violence: but he cannot assemble them to go with him to the market, or elsewhere for his safeguard against violence: and the reason of all this is, because domus sua cuique est tutissimum refugium.

*Payton v. New York*, 445 U.S. 573, 597 n. 44, 100 S.Ct. 1371, 1385 n. 44, 63 L.Ed.2d 639, 657 n. 44 (1980) (quoting *Semayne's Case*, 5 CoRep 91a, 91b, 77 EngRep 194, 195 (KB 1603)). This passage illustrates that the nature of a self-defense claim changes when the incident at issue occurred in the home. Thus, while the law always seeks to discourage and minimize the use of deadly force, it cannot ignore the additional concerns present when a person is assailed in his or her home.

In light of the increasing prevalence of crime in our society, all of these concerns take on added importance. It is even more important today that deadly force not become the method of choice for resolving disputes. Yet, it is also of added importance that citizens be allowed to defend themselves, especially inside the home. After considering all of these issues as they apply to the present case, I must concur that the Commonwealth has proven that Soto did not act in self-defense when he shot Santiago on October 23, 1991. Notwithstanding my great respect for the the Honorable David N. Savitt and his well-written opinion in the proceeding below, I felt that it was important to write this concurring opinion in order to clarify certain aspects of the law of self-defense and offer guidance to the bench and bar, as well as to the general public. By clearly explaining the reasons for my conclusion in this case, it is my hope that the important concerns underlying the law of self-defense will not be overlooked.