**COMMONWEALTH of Pennsylvania,**

v.

**Gary Lee MILLIGAN, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 3, 1997.

Filed April 29, 1997.

Vincent P. DiFabio, Paoli, for appellant.

John H. Pavloff, Assistant District Attorney, West Chester, for Commonwealth, appellee.

Before KELLY, FORD ELLIOTT and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

On March 14, 1996, a jury found appellant Gary Lee Milligan guilty of driving under the influence of alcohol. He was subsequently sentenced to 48 hours to 23 months imprisonment and fined $300. This appeal follows wherein Milligan presents the following issues for our review:

1. Whether the trial court erred in failing to suppress certain inculpatory statements made to the police.

2. Whether the trial court erred in failing to instruct the jury on flight as consciousness of guilt concerning a person alleged to have been at the scene of the accident before police arrived.

3. Whether trial counsel was ineffective for failing to call, as a witness, a police officer who had stopped the appellant's vehicle earlier in the evening.

Our standard for reviewing a denial of a motion to suppress is well settled. We must determine

whether the factual findings are supported by the record. In making this determination, we must consider only the evidence of the prosecution's witnesses, and so much evidence of the defense that remains uncontradicted when fairly read in the context of the record as a whole. When the evidence supports the factual findings, we are bound by such findings, we may reverse only if the legal conclusions drawn therefrom are erroneous.

*Commonwealth v. Medley*, 531 Pa. 279, 612 A.2d 430, 432 (1992).

Instantly, the trial court's following findings of fact are supported by the record:

1. On April 5, 1995, Officer Timothy Hopp[e]s, of North Coventry Township, was dispatched to the scene of a traffic accident on Laurelwood Road.

2. Upon arriving at the scene, the officer observed a single car with heavy front-end damage resting at a telephone pole.

3. The officer observed that there was considerable damage to the car windshield which, in his eight years of experience as a police officer and investigating traffic accidents, he believed was consistent with someone hitting their head against the windshield.

4. The officer observed [Milligan] sitting across the street from the vehicle on a bank and observed lacerations on his mouth and head which were bleeding, but not excessively.

5. The officer was told by bystanders that another person was observed walking away from the accident.

6. The officer questioned [Milligan] during the approximate three to four minute period while they were waiting for an ambulance to arrive.

7. [Milligan] told the officer that he was an occupant in the vehicle.

8. The police officer observed [Milligan] to have slurred speech, bloodshot eyes, a heavy odor of alcohol, and that he had difficulty understanding what the man was saying.

9. When [Milligan] was asked who else was in the vehicle, he indicated that there were two people, but gave different names of individuals and the number of names exceeded two.

10. On two occasions, [Milligan] denied that he was the driver of the vehicle.

11. The officer then asked [Milligan] if one of the other names he gave was the driver of the vehicle, [Milligan] said "no."

12. The officer followed this up with the question, "so you were the driver, weren't you?", and the defendant responded "yes."

13. [Milligan] was asked for his driver's license and owner's card, and in attempting to reach his wallet, which was behind him, [Milligan] started to fall face-first down an embankment.

14. When the ambulance arrived, [Milligan] vacillated in deciding whether to receive treatment, and the officer encouraged [him] to do so based on the injuries [the lawman] observed and the damage to the vehicle.

15. [Milligan] was transported to the hospital, and the officer followed, where he obtained [Milligan's] consent to have blood drawn.

16. When [Milligan] was asked at the hospital how the accident happened, he responded, "I was perfectly legal and someone illegal came by."

17. The officer described [Milligan] as "barely coherent" in his police report, but explained that to mean he was difficult to understand although his thoughts were understandable.

18. The officer has been involved in approximately 150–200 arrests for driving under the influence and has been an assisting officer in numerous other offenses. The officer has also been involved in investigating accidents and in approximately 25–50 times the accidents have involved a combination of injury and driving under the influence.

19. It was the officer's opinion that [Milligan's] speech pattern and content of his

speech w[ere] due to intoxication and not injury.

Opinion 3/7/96, at 1–3.

■ On appeal, Milligan alleges that the trial court erred in failing to suppress his statements to Officer Hoppes at the accident scene. Beyond restating the facts, the totality of Milligan's argument in support of his claim is as follows:

> The appellant contends that his statement was not voluntary due to the nature and extent of his injuries and his level of intoxication. In *Commonwealth v. Perry*, 475 Pa. 1, 379 A.2d 545 (1977) the Court held that a statement which is involuntary due to an accused's physical and mental condition must be suppressed. The appellant herein asserts that Officer Hoppes [sic] testimony clearly established that his injuries and and level of intoxication resulted in an involuntary statement which should have been suppressed.

Appellant's brief at 2.

At the outset, we must voice our displeasure with appellant's ink-deprived argument. First, appellant's lone cite is improper in both form and substance. Appellant's claim, that *Commonwealth v. Perry* may be found at 279 A.2d 545, is simply erroneous. *Perry* is not reported in volume 279, but can, in actuality, be found in volume *3* 79.

Further, appellant's reliance upon *Perry* is clearly misplaced. A simple reading of *Perry* reveals that it is a plurality decision. There, appellant, who had shot himself in the chest, alleged that the trial court erred in suppressing his confession because it was involuntary due to his weakened mental and physical condition. Justice Manderino's opinion, finding that the confession was involuntary and, thus, in support of reversing the judgment of sentence, was joined only by Justice Roberts. Chief Justice Eagen and Justice Nix concurred in the result. Moreover, Justice Pomeroy authored a dissenting opinion, which was joined by Justices O'Brien and Packel, finding that the confession was, in fact, voluntary. As such, *Perry* is clearly

a plurality decision and "it is axiomatic that a plurality opinion ... is without precedential authority." *CRY, Inc. v. Mill Service, Inc.*, 536 Pa. 462, 469, 640 A.2d 372, 376 n. 3 (1994). Thus, Milligan's first issue on appeal is supported exclusively by a case which "no lower court is bound by." *Id.*

Even if Justice Manderino's opinion in *Perry* was precedential, Milligan's claim would still fail. Justice Manderino concluded:

> In considering voluntariness an accused's physical and mental condition must be considered, for sickness and ill health may well influence his will to resist. *Commonwealth v. Holton*, 432 Pa. 11, 247 A.2d 228 (1968). In the present case, prior to interrogation, the appellant had been hospitalized with a gunshot wound. At the time of interrogation the bullet remained lodged beneath his chest wall. He was being fed intravenously, and he had a catheter through his penis leading into his bladder causing much discomfort. He was under police guard and had not seen a familiar face for more than twelve hours before the interrogation. During the interrogation he asked for and was denied medication for pain.
>
> Under these circumstances, we are unable to conclude that the appellant's confession was the product of an essentially free and unconstrained choice. Appellant's confession should have been suppressed.

*Perry*, 475 Pa. at 6, 379 A.2d at 547–48 (Manderino, J., with one Justice joining).

Clearly, the circumstances in the instant case do not compare with those in *Perry*. While it is true that instantly we are also faced with the circumstance of Milligan's intoxication, our Supreme Court has stated that

> the fact that an accused has been drinking does not automatically invalidate his subsequent incriminating statements. The test is whether he had sufficient mental capacity at the time of giving his statements to know what he was saying and to have

voluntarily intended to say it. Recent imbibing or the existence of a hangover does not make his confession inadmissible, but only goes to the weight to be accorded to it.

* * *

The Commonwealth [is] required to show voluntariness only by a preponderance of the credible evidence.

*Commonwealth v. Smith,* 447 Pa. 457, 460, 291 A.2d 103, 104 (1972). *See Commonwealth v. Bell,* 386 Pa.Super. 164, 172–74, 562 A.2d 849, 852–53 (1989).

Instantly, the trial court did not err in finding that Milligan's confession was voluntary. Milligan was not at the hospital when he uttered his confession and he had only been talking to the police officer for a few moments. Moreover, appellant had merely suffered a few lacerations for which he, at first, refused medical attention. Finally, while appellant appeared intoxicated, "his thoughts were understandable." Opinion 3/7/96, at 3. In fact, he had the presence of mind to twice deny culpability. Quite simply, after considering the totality of the circumstances, we cannot conclude that Milligan's confession was "the result of factors which overwhelmed his ability to exercise a reasoned choice." *Commonwealth v. Webb,* 491 Pa. 329, 334, 421 A.2d 161, 163 (1980). *See Smith, supra; Bell, supra.*

Next, Milligan alleges that the trial court erred in failing to instruct the jury concerning the flight of his alleged companion. This issue is fraught with intrigue as the status of the law in this area is unsettled. There is no question that this instruction is available to the prosecution where "the defendant fled or concealed himself immediately after the crime occurred or at some later time." Note to Pa.S.S.J.I. (Crim) 3.14 (emphasis added). Whether the request is available to a defendant who is attempting to establish that another person, rather than him/herself, is the true guilty party, is unsettled. As noted by the trial court, "[t]he fact scenario in the case

*sub judice* seems to be one of first impression for which there is no sure guidance in the law." Opinion 9/18/96, at 4.

█  Appellee directs our attention to the case of *Commonwealth v. Wyche,* where this Court stated:

[T]he benefit of a "flight" instruction, which is available to the Commonwealth with respect to the defendant's guilty behavior, should also be available to a defendant with regard to another's guilty behavior where the accused defends on that basis.

320 Pa.Super. 483, 487, 467 A.2d 636, 637–38 (1983). *See Commonwealth v. Hartey,* 424 Pa.Super. 29, 39, 621 A.2d 1023, 1029 (1993) ("This court has suggested that the ['flight'] charge should be available 'to a defendant with regard to another's guilty behavior where the accused defends on that basis.'") (quoting *Wyche, supra*), *alloc. denied,* 540 Pa. 611, 656 A.2d 117 (1994). The above language, however, was not relevant to this Court's ultimate dispositions in either *Wyche* or *Hartey* and, as such, remains non-binding *dicta.* Nevertheless, we believe that these principles are sound.

█  "It is well settled that evidence which tends to show that the crime for which an accused stands trial was committed by someone else is relevant and admissible." *Commonwealth v. McGowan,* 535 Pa. 292, 295, 635 A.2d 113, 115 (1993). Further, the trial court must "instruct on the law applicable to the issues which arise out of the evidence and the arguments presented." *Commonwealth v. Birch,* 434 Pa.Super. 575, 582, 644 A.2d 759, 762 (1994). In light of these edicts, it would appear that, once a defendant properly introduces evidence that someone else fled the crime scene, the trial court is duty bound to instruct the jury concerning the significance of this evidence. *See id.* This decision is also compatible with Pennsylvania's Suggested Standard Jury Instruction on flight, which, to a great extent, is neutral in its application to a defendant or another party. The suggested instruction reads, in pertinent part, as follows:

Generally speaking when a crime has been committed and a person thinks he is or may be accused of committing it and he flees or conceals himself such flight or concealment is a circumstance tending to prove the person is conscious of guilt. Such flight or concealment does not necessarily show consciousness of guilt in every case. A person may flee or hide for some other motive and may do so even though innocent. Whether the evidence of flight or concealment in this case should be looked at as tending to prove guilt depends upon the facts and circumstances of this case especially upon motives which may have prompted the flight or concealment.

Pa.S.S.J.I. (Crim) 3.14. Accordingly, the trial court could easily tailor this instruction to apply where the accused defends based upon another party's flight.

■ Having found that a defendant is entitled to jury instructions concerning the flight of different party, we turn to the case at hand. It is axiomatic that "jury instructions regarding defenses and offenses are not warranted unless there is evidence to support such instructions." *Commonwealth v. Browdie*, 543 Pa. 337, ——, 671 A.2d 668, 673 (1996). Instantly, there was considerable evidence that another person had been inside Milligan's Cadillac and then fled the scene before the police arrived. One witness, who had seen the Cadillac immediately prior to the accident, testified that two occupants were inside the vehicle. She was sure of her testimony because the Cadillac was swerving back and forth across the road and she "had never seen anyone drive like that before." N.T. 3/13/96, at 68. Further, Officer Hoppes testified that prior to reaching the accident scene, he had received a dispatch which alerted him that "there was a party who had been involved in the accident who was leaving the scene." *Id.* at 81. When the lawman arrived at the scene of the accident, only Milligan was there. More importantly, however, is Officer Hoppes testimony that "there were two indentations in the windshield on this vehicle, indicating to me that there had been at least two occupants of the vehicle."

*Id.* at 82. Further, we have Milligan's own statement to the police that someone else had been inside the Cadillac. Finally, the defense presented Joseph Oliver's testimony that, prior to the accident, he and Robert Smith were passengers in the Cadillac. Oliver testified that the trio stopped in order for him to make a phone call. While he was on the phone, however, he watched as the Cadillac pulled away with Smith driving and Milligan in the passenger seat. Soon thereafter, the accident occurred. Oliver also testified that, on the following day, he met with Smith whose face was severely cut up. Oliver stated that, during this meeting, Smith confessed that he had been driving Milligan's vehicle during the accident and that he fled the scene because "he knew that the police were coming." *Id.* at 132. In light of this abundance of evidence, we find that a charge on flight was clearly warranted in the instant case. Accordingly, the trial court erred in failing to issue this instruction.

■■ Nevertheless, we do not find the trial court's error to be fatal. While Milligan may have been entitled to a jury instruction on the flight of his companion, this omission was nothing more than a harmless error. "[A]n error is harmless if it does not prejudice the defendant, or the effect on the jury is minimal." *Commonwealth v. Terry*, 513 Pa. 381, 381, 521 A.2d 398, 409, *cert. denied*, 482 U.S. 920, 107 S.Ct. 3198, 96 L.Ed.2d 685 (1987). We are convinced beyond a reasonable doubt that the effect on the jury, of not receiving the flight charge, was minimal. The omitted charge did not involve a fundamental matter such as the burden of proof. *See Commonwealth v. Bishop*, 472 Pa. 485, 372 A.2d 794 (1977). Instead, the flight charge merely would have suggested to the jury a manner in which to examine certain pieces of evidence. To these ends, Milligan may have actually benefited from the court's failure to instruct. As previously noted by this Court, failure to instruct on flight may result in "the jury ... treat[ing] the ... flight as ironclad circumstances tending to prove consciousness of guilt." *Commonwealth v. Martinez*, 413 Pa.Super. 454, 460,

605 A.2d 811, 814, *alloc. denied,* 533 Pa. 608, 618 A.2d 399 (1992). Thus, in this respect, the trial court's error, rather than harming appellant, may have worked to his advantage. Accordingly, we deem the trial court's error harmless and Milligan is entitled to no relief. *See Terry, supra.*

■ Milligan lastly claims that trial counsel was ineffective for failing to call a police officer, who had stopped defendant's vehicle earlier in the evening, as a witness. We employ a three-part test for reviewing ineffective assistance claims. First, counsel's unpursued path must be of arguable merit. Second, counsel's chosen course must have had no reasonable basis designed to advance his client's interests. Third, appellant must show that his counsel's ineffectiveness prejudiced him such that he was denied a fair trial. *See Commonwealth v. Rosario,* 438 Pa.Super. 241, 250–54, 652 A.2d 354, 359–60 (1994), *alloc. denied,* 546 Pa. 668, 685 A.2d 547 (1996). Further, when ineffectiveness is alleged for failure to call a witness, one must show the following:

> (1) the witness existed; (2) the witness was available; (3) counsel was informed of the existence of the witness or should have otherwise have known of him/her; (4) the witness was prepared to cooperate and testify for appellant at trial; and (5) the absence of the testimony prejudiced appellant so as to deny him a fair trial. *Commonwealth v. Petras,* 368 Pa.Super. 372, 534 A.2d 483 (1987).

*Commonwealth v. Gonzalez,* 415 Pa.Super. 65, 74, 608 A.2d 528, 532 (1992).

■ Instantly, Joseph Oliver testified that, prior to the accident, Milligan was driving the Cadillac when it was pulled over by the Chief of Police of Caernarvon Township, Berks County. The police chief administered sobriety tests to Milligan, which he failed. The lawman then prohibited appellant from driving the car and ordered Oliver to take the wheel. Milligan now alleges that trial counsel was ineffective for failing to call the police chief as a witness whose testimony "would have been extremely important to corroborate the testimony of Joseph Oliver." Appellant's brief at 5–6.

■ Appellant's argument necessarily fails. "As a general rule, counsel will not be deemed ineffective for failing to call witnesses whose testimony is merely cumulative of that of other witnesses." *Commonwealth v. Spencer,* 432 Pa.Super. 631, 640, 639 A.2d 820, 825 (1994). *See Commonwealth v. Moore,* 373 Pa.Super. 603, 617, 542 A.2d 106, 113 (1988) ("[C]ounsel cannot be held ineffective for not calling unhelpful or unfavorable witnesses."); *Commonwealth v. Bell,* 328 Pa.Super. 35, 58, 476 A.2d 439, 451 (1984) ("[C]ounsel will not be held to be ineffective in not calling every conceivable witness to testify to the same facts."). Accordingly, Milligan's last appellate issue is doomed to join the rest in failure.

Judgment of sentence affirmed.

KELLY, Judge, dissenting.

I respectfully dissent. While I, too, believe that the trial court erred by refusing to instruct the jury concerning the flight of Milligan's alleged companion, *see Commonwealth v. Hartey,* 424 Pa.Super. 29, 40, 621 A.2d 1023, 1029 (1993), *allocatur denied,* 540 Pa. 611, 656 A.2d 117 (1994), I disagree with my colleagues' conclusion that the error was harmless. Given the evidence presented, Milligan was entitled to a flight instruction and the failure to do so constituted reversible error. *See Commonwealth v. Birch,* 434 Pa.Super. 575, 582, 644 A.2d 759, 762 (1994). Because I would reverse and remand for a new trial, I must dissent.