## Commonwealth v. Eckenrode

C.P. of Dauphin County, no. 1342 CR 2006.

*Francis T. Chardo,* for Commonwealth.
*William C. Costopoulos,* for defendant.

LEWIS, *J.,* October 4, 2006—Presently before this court is defendant Kevin Patrick Eckenrode's petition for writ of habeas corpus and omnibus pretrial motion. For the reasons set forth below, this court denies both the petition and motion.

## FACTUAL HISTORY

A suppression hearing held before this court on August 4, 2006 established the following facts: on February 25, 2006, at approximately 7 p.m., Harrisburg City Police were dispatched to the Pennsylvania Place apartment building located at 301 Chestnut Street in response to a 911 call placed by off-duty National Guard Lieutenant Paul Kanish, who told 911 operators that he witnessed a woman fall to the ground as he was walking toward the building. Kanish also told operators that the defendant was present at the scene and appeared to have knowledge of the incident. The 911 operator directed Kanish to detain the defendant until police arrived, to which Lieu-

tenant Kanish, who was aided by fellow military officer Sharon Jenkins, complied. Upon arriving at Pennsylvania Place, police found Rachel Kozlusky's body lying on the ground in a pool of blood, and shortly afterwards, a Dauphin County deputy coroner pronounced Ms. Kozlusky dead at the scene.

At around 7:15 p.m., Detective Donald Heffner arrived at the scene and spoke briefly with the defendant. The defendant told Detective Heffner that Ms. Kozlusky, age 23, was sitting on the window ledge of his 23rd floor apartment when she started to slip, so he tried to grab her, but she fell. Detective Heffner then asked the defendant if he would go to the police station for further questioning, to which the defendant agreed. Detective Heffner then, in the presence of the defendant, told Officer Stacey Lauver to transport the defendant to the police station, but that the defendant was not to be booked because he was only a witness. Officer Lauver then placed the defendant into the back of a transport van and took him to the station. Upon arriving at the station, Officer Lauver escorted the defendant to the roll call room, where the two watched the Olympics on television. While in the roll call room, the defendant kept asking if Ms. Kozlusky was okay, and at one point blurted out that he was hanging Kozlusky out of the window, but could no longer hold onto her. Officer Lauver then asked the defendant how he was hanging Kozlusky out of the window, to which the defendant responded by demonstrating such on Officer Lauver. Lauver did not ask any further questions.

Detective Christopher Krokos then arrived at the station at approximately 8:30 p.m. for the purpose of interviewing the defendant. Detective Krokos went to the roll

call room and asked Officer Lauver to speak with him in the hallway, out of the defendant's presence, so that she could brief him on what had occurred. Officer Lauver relayed to Detective Krokos what the defendant had told her. Krokos then told the defendant that he wanted to talk to him about what had happened, but if the defendant preferred, that the two could talk at another time. The defendant indicated that he wished to complete the interview at that time. Detective Krokos then escorted the defendant to a third floor conference room where the two sat at a table with the defendant sitting closer to an open door. Krokos explained to the defendant that he was free to leave. The defendant then told Detective Krokos that Ms. Kozlusky was his girlfriend and that she came to visit him on Friday evening. He further stated that he and Kozlusky stayed up most of the night drinking a case of beer and a bottle of wine, then woke up at around 3 p.m. on Saturday and went to the Gingerbread Man in Harrisburg at around 4 p.m and continued to drink until approximately 7 p.m. The defendant also told Detective Krokos that Ms. Kozlusky wanted to sit on the window ledge of his apartment, but that she could not get the screen out of the window, so the defendant assisted her in doing so. Ms. Kozlusky then sat on the window sill with her feet hanging out of the apartment. While sitting on the window sill, Ms. Kozlusky told the defendant that she wanted to see if she could touch her feet to the window of the apartment below, and asked the defendant for help in doing so. At that point, the defendant told Detective Krokos that he attempted to lower Kozlusky by her armpits, but that she was not low enough. He then changed his grip to just holding her by her wrists, when she slipped from his grasp and fell.

Detective Heffner arrived at the station at around 9:25 p.m. and spoke with Detective Krokos about his interview with the defendant, and at around 9:40 p.m. read the defendant his *Miranda* rights and charged him with criminal homicide.[1] Upon being *Mirandized,* the defendant invoked his right to counsel, at which time all questioning ceased and the defendant was booked. Shortly after midnight on February 26, 2006, police executed a search warrant on the defendant's apartment, which led to the discovery of a marijuana pipe in a dresser drawer and resulted in the defendant being charged with possession of drug paraphernalia.[2]

Detectives Krokos and Heffner both described the defendant as being intoxicated, but that the defendant was not slurring his speech, or having trouble walking, and was responsive to questions and forming complete sentences. Detective Krokos indicated that at several points during their interview, the defendant was crying. Additionally, Officer Lauver testified that when she initially observed the defendant, she believed that he was "extremely intoxicated". However, Lauver further explained that after having had contact with the defendant, and talking to him about the Olympics and making other "small talk" at the police station, she could tell that he was not as intoxicated as she originally believed. A blood test taken at approximately 12:15 p.m. on February 26, 2006, revealed that the defendant's blood alcohol level was .256 percent.

---

1. 18 Pa.C.S. §2501.
2. 35 Pa.C.S. §780-113(a)(32).

## PROCEDURAL HISTORY

After his preliminary arraignment, the defendant was remanded to the Dauphin County Prison without bail. On March 1, 2006, defendant filed a motion for bail, and on March 14, 2006, this court held a hearing which resulted in bail being set in the amount of $200,000. Also at the bail hearing, the Commonwealth conceded that the evidence against the defendant did not rise to the level of first- or second-degree murder. On March 29, 2006, a preliminary hearing was held before Magisterial District Judge Joseph Solomon and the charges against the defendant were bound over to this court. On June 6, 2006, the defendant filed a petition for writ of habeas corpus, along with an omnibus pretrial motion, and on August 3, 2006 defendant filed memoranda supporting his position. This court held a hearing concerning both issues on August 4, 2006, and deferred its ruling allowing the Commonwealth to file a brief in support of its position, and the defendant to file any additional briefs. The Commonwealth filed a brief in opposition to defendant's omnibus pretrial motion on August 18, 2006, and the defendant filed a response via letter dated August 23, 2006.

## PETITION FOR WRIT OF HABEAS CORPUS

Defendant asserts that the Commonwealth has failed to establish a prima facie case of third-degree murder because there is no evidence from which malice aforethought can be inferred. This court finds such argument to be without merit.

Third-degree murder is the unlawful killing of another with malice. *Commonwealth v. Hickson,* 402 Pa.

Super. 53, 58, 586 A.2d 393, 395 (Pa. Super. 1990). (citations omitted) As the defendant points out, malice aforethought, the general intent prerequisite to a finding of murder in any degree, has been defined by the Pennsylvania Supreme Court as follows:

"[M]alice aforethought requires a unique state or frame of mind characterized by wickedness, hardness, cruelty, recklessness, and disregard of social duty:

"Malice is a legal term, implying much more [than ill-will, spite, or a grudge]. It comprehends not only a particular ill-will, but every case where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured. Murder, therefore, at common law embraces cases where no intent to kill existed, but where the state or frame of mind termed malice, in its legal sense, prevailed.

"Malice has been characterized as exhibiting an '*extreme* indifference to human life,' and 'may be found to exist not only in an intentional killing, but also in an unintentional homicide where the perpetrator "consciously disregarded *an unjustified and extremely high risk* that his actions might cause death or serious bodily harm."'" *Commonwealth v. Ludwig,* 583 Pa. 6, 21-22, 874 A.2d 623, 632 (Pa. 2005). (citations omitted) (emphasis in original)

This court finds that the defendant's actions in dangling Ms. Kozlusky outside of his 23rd floor apartment building by her wrists could certainly be characterized by a jury as "exhibiting an extreme indifference to human

life" and "consciously disregard[ing] an unjustified and extremely high risk that his actions might cause death or serious bodily harm." *Id.*

The defendant argues that in light of his extreme intoxication and emotionally distressed condition, that defendant was legally incapable of "consciously disregarding any unjustified and extremely high risk that his actions might cause death or serious bodily injury." And even if he was legally capable of achieving the requisite mental state, that the defendant's conduct was in no way legally or factually malicious. Further, the defendant asserts that because Ms. Kozlusky voluntarily sat on the window sill, that she assumed the risk of sustaining injury or death.

It is well-settled that voluntary intoxication is not a defense to third-degree murder. 18 Pa.C.S. §308. Additionally, consent to bodily injury is only a defense in the context of competitive sporting events or in situations where the consent establishes a justification defense. 18 Pa.C.S. §311(b). Further, assent does not constitute consent if it is given by a person who by reason of intoxication is manifestly unable or known by the actor to be unable to make a reasonable judgment as to the nature or harmfulness of the conduct charged to constitute the offense. 18 Pa.C.S. §311(c)(2).

Thus, defendant's argument that he was too intoxicated to act with malice must fail. This court finds that the Commonwealth has presented sufficient evidence to proceed with a third-degree murder charge, and therefore denies the defendant's petition for writ of habeas corpus.

## OMNIBUS PRETRIAL MOTION
## TO SUPPRESS STATEMENTS

Defendant argues that statements made to the police should be suppressed because they were obtained in violation of the defendant's constitutional rights. First, defendant asserts that his statements to police must be suppressed due to the fact that defendant underwent custodial interrogation for over two hours before being apprised of his *Miranda* warnings. Pennsylvania courts have set forth the following standard regarding situations in which *Miranda* applies:

"There are two separate requirements, custody and interrogation, that have to be found in order for *Miranda* to apply. Police detentions in Pennsylvania become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of arrest.

"Interrogation is police conduct calculated to, expected to or likely to evoke admission. The overlying test to determine whether a person is being subjected to a custodial interrogation necessitating *Miranda* warnings is whether he is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation.

"The standard for determining whether police have initiated a custodial interrogation or an arrest is an objective one, with due consideration given to the reasonable impression conveyed to the person interrogated rather than the strictly subjective view of the troopers or the person being seized.

"The factors that the court considers to determine whether there has been a custodial interrogation include: the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions.

"Police detentions become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to become the functional equivalent of an arrest. Arrest is an act that indicates an intention to take a person into custody or that subjects the person to the will and control of the person making the arrest." *Commonwealth v. Turner,* 772 A.2d 970, 973-74 (Pa. Super. 2001). (citations omitted)

We now turn to the crucial issue of whether custodial interrogation occurred in the instant case. This court must determine if the defendant was in custody at the times he made statements to various members of the Harrisburg City Police Department.

The defendant argues that he was the focus of the investigation from the moment he was detained by Lieutenants Kanish and Jenkins, two passers-by complying with the 911 operator's directive to detain the defendant. Defendant asserts that from the point of this detention, up until his arrest several hours later, he was in custody.

This court finds such argument to lack merit. There is no evidence appearing in the record to indicate that Lieutenants Kanish and Jenkins were dressed in military

uniforms, or that they in any way restrained the defendant; rather the two off-duty military officers simply moved the defendant away from Ms. Kozlusky's body and stood with him off to the side. This court does not find that these actions in complying with the 911 operator's request to detain the defendant constitute state action.

Additionally, Detective Heffner's contact with the defendant was noncustodial. Detective Heffner testified that when he arrived at Pennsylvania Place the defendant approached him, which is when Heffner asked the defendant what had happened. Detective Heffner's contact with the defendant was very brief, and ended in Heffner asking the defendant if he would go to the police station to answer some further questions. When the defendant agreed to go to the station, Detective Heffner specifically told Officer Lauver, in the defendant's presence, not to book the defendant and that he was only a witness. Additionally, the defendant was not handcuffed or restrained at any point during his brief encounter with Detective Heffner.

Next, this court must look to Officer Lauver's contact with the defendant. At the direction of Detective Heffner, Officer Lauver placed the defendant, who was not handcuffed or shackled, into the back of a marked Harrisburg Police Department transport van, and took him to the station. Officer Lauver testified that the defendant had to ride in the back of the van, as do all passengers, due to department policy. At the station, Officer Lauver and the defendant sat in a roll call room and watched the Olympics on television. Officer Lauver testified that the defendant was not handcuffed or restrained at any time, and that the two made "small talk" during the time that they were together. Under these facts, this court does not

find that the defendant was in police custody at the point of his interaction with Officer Lauver.

Additionally, this court finds that Detective Krokos' questioning of the defendant was noncustodial. Detective Krokos specifically told the defendant that he was free to leave the station, and that they could do the interview at another time. However, the defendant said that he wanted to get the interview over with, and that he would speak to Detective Krokos at that time. Further, the defendant, who was unrestrained, sat at a conference table, close to an open door, while he and Detective Krokos spoke for less than one hour. Under the totality of the circumstances surrounding the interview between Detective Krokos and the defendant, this court does not find that the defendant was in police custody. As such, *Miranda* warnings were not required.

Next, the defendant argues that his statements should be suppressed because his extreme degree of intoxication and state of emotional distress render the statements made involuntary.

In support of his position, defendant cites *Commonwealth v. Holton,* 432 Pa. 11, 247 A.2d 228 (Pa. 1968), where the Supreme Court reversed a defendant's conviction of various assault, rape and larceny charges, due to the fact that at the time the defendant made incriminating statements he was a "chronic alcoholic" who was "getting the d.t.'s," was nauseous and had pains in his stomach and head, was sweating, shaking and cold, and requested medical assistance which was refused. Under those facts, the court held that the defendant's mental and physical condition rendered the statements involun-

tary, and thus should have been suppressed. *Holton,* 432 Pa. at 15-16, 247 A.2d at 231.

The present case is easily distinguishable from *Holton.* Here, there is no evidence in the record to suggest that the defendant was ever sick or hallucinating, or that he was not capable of forming complete and reasonable thoughts and sentences. This court finds *Commonwealth v. Milligan,* 693 A.2d 1313, 1317 (Pa. Super. 1997) to be controlling. There, the Superior Court set forth the following standard regarding statements made by an intoxicated defendant:

"The fact that an accused has been drinking does not automatically invalidate his subsequent incriminating statements. The test is whether he had sufficient mental capacity at the time of giving his statements to know what he was saying and to have voluntarily intended to say it. Recent imbibing or the existence of a hangover does not make his confession inadmissible, but only goes to the weight to be accorded to it." *Milligan,* 693 A.2d at 1316-17.

In the instant case, although the defendant was obviously under the influence of alcohol at the time of his statements, as evidenced by his blood alcohol content level as well as testimony from Krokos, Heffner, and Lauver, the statements were clearly voluntary. Detective Krokos testified that the defendant was forming complete sentences and was not slurring his speech. Additionally, Detective Krokos testified that the defendant did not change his "story" regarding the night's events during the hour that the two spoke. This fact is further evidence that the defendant was capable of reasoning and formulating thoughts.

This court finds that the defendant had "sufficient mental capacity at the time of giving his statements to know what he was saying and to have voluntarily intended to say it." *Id.*

The defendant's final argument supporting his suppression motion asserts that his due process rights were violated because the police failed to tape his interrogations and destroyed the handwritten notes of his statements.

Presently, there is no requirement in Pennsylvania for police officers to record statements made by defendants. Although not controlling, the Superior Court in *Commonwealth v. Craft,* 447 Pa. Super. 371, 669 A.2d 394 (Pa. Super. 1995), examined this very issue before us today, holding that the due process requirements of the United States and Pennsylvania Constitutions do not require the recording of custodial confessions.

Therefore, although defendant makes many persuasive policy arguments in support of his position that statements should be electronically memorialized, the defendant fails to set forth a compelling reason for this court to interpret the state's due process clause as requiring such recordings.

Accordingly, the following is entered:

## ORDER

And now, October 4, 2006, it is hereby ordered that both the defendant's petition for writ of habeas corpus and omnibus pretrial motion are denied.