J-S03037-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LOUIS RAMOS | : | |
| | : | |
| Appellant | : | No. 773 EDA 2022 |

Appeal from the PCRA Order Entered January 20, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000990-2017

BEFORE: BOWES, J., McCAFFERY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED OCTOBER 25, 2023**

Louis Ramos ("Ramos") appeals from the order dismissing his first petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

This Court previously summarized the underlying factual and procedural history as follows:

> This case arises from an illicit sexual relationship between [Ramos] and his minor nephew, I.C. At trial, I.C. testified that from 2008 to 2010 his family lived with [Ramos, his maternal uncle,] in Philadelphia. I.C. indicated that he and [Ramos], "hit it off" and always hung out together. At that time, I.C. was 7 to 8 years old and was going from the third grade to fourth grade. I.C. stated that during this time, [Ramos] began to undress and kiss him when they were in the basement of the residence. [Ramos] told I.C., "[D]on't tell anybody. This has to stay a top secret." In addition, [Ramos] began introducing I.C. to marijuana.

_____

[1] **_See_** 42 Pa.C.S.A. §§ 9541-9546.

As the relationship progressed, [Ramos] began taking I.C. to his job working the night shift at a scrap yard. There, [Ramos] began showing I.C. gay porn videos and suggested that they try the acts depicted in the videos. On multiple occasions, while watching the gay porn, [Ramos] performed oral sex on I.C. In addition, [Ramos] had I.C. shave his butt and legs and place his fingers in [Ramos's] butt. At [Ramos's] suggestion, I.C. also placed his penis in [Ramos's] butt. [Ramos] asked I.C. to perform oral sex on him, but I.C. declined, fearing he would choke. Instead, I.C. would "jerk off" [Ramos] by putting his hand on [Ramos's] penis and pulling back and forth. When I.C. refused to allow [Ramos] to place his penis in I.C.'s butt because he was afraid it would hurt, [Ramos] would instead lay behind I.C., place his penis between his legs and then thrust back and forth.

After I.C.'s family and [Ramos] moved to I.C's father's house, [Ramos] on multiple occasions entered the bathroom when I.C. was taking a shower and performed oral sex on him.

In 2010, [I.C.] and his family moved to Connecticut and I.C. had no further contact with [Ramos] until the death of his grandmother in January 2016. [Ramos] and a number of other relatives from Philadelphia travelled to Connecticut for her funeral. After [Ramos] returned to Philadelphia, I.C. confided in his boyfriend, Adbiel[,] who urged him to tell his mother about the above events. I.C. then informed his mother, who called the Philadelphia Police.

[Ramos] was arrested on January 20, 2017 and charged with[, *inter alia*, involuntary deviate sexual intercourse ("IDSI") with a child, unlawful contact with a minor, indecent assault, and corruption of a minor]. On July 18, 2018, the case proceeded to a jury trial[, whereat Ramos presented several witnesses, including[:] his brother; his sister, Mary Moya ("Moya"); and his two nieces, who testified as character witnesses as to Ramos's reputation for peacefulness and being law abiding] . . .. [I]n July [] 2018, the jury returned a verdict of guilty [on those] offenses.

On October 25, 2018, the trial court sentenced [Ramos] to an aggregate term of 12 to 24 years' imprisonment. [Ramos] filed [a] post-sentence motion[]. On March 13, 2019, the trial court granted the post-sentence motion, resentencing [Ramos] to . . . concurrent terms of 7 to 14 years' [Ramos] for IDSI and unlawful contact with a minor and consecutive term of 1 to 2 years in prison

for indecent assault. The court imposed no further penalty for corruption of a minor. As a result, the trial court reduced [Ramos's] aggregate sentence to 8 to 16 years' imprisonment. [Ramos] timely appealed.

***Commonwealth v. Ramos***, 239 A.3d 109 (Pa. Super. 2020) (unpublished memorandum at *1) (internal citation omitted; some brackets in original). On July 29, 2020, this Court affirmed Ramos's judgment of sentence on direct appeal. ***See id***. (unpublished memorandum at *4). Ramos did not petition our Supreme Court for allowance of appeal.

On December 8, 2020, Ramos filed a timely, counseled first PCRA petition in which he leveled several ineffective assistance of counsel claims against his trial counsel for, *inter alia*, the following: failing to object at trial to the admission of a forensic interview video, in which I.C. detailed his abuse by Ramos; failing to request a limiting instruction that the video could not be considered as substantive evidence; failing to examine Moya about I.C.'s apparent comfort around Ramos around the time of a family funeral in Connecticut several years after the abuse; failing to examine the defense character witnesses—who testified at trial to Ramos's reputation for being law abiding—about Ramos's reputation for sexual propriety and chastity; and for failing to request a "prompt complaint" jury instruction. ***See***, ***e.g.***, PCRA Petition, 12/8/20 (unnumbered at 5-6).

The PCRA court held an evidentiary hearing on Ramos's petition, at which trial counsel testified about his trial strategy, and the parties stipulated that Moya, if called to testify, would testify that during a family gathering in

- 3 -

Connecticut, occasioned by a funeral, and years after I.C.'s abuse by Ramos, but prior to I.C.'s disclosure of the abuse,

> she witnessed and observed [I.C.] and [Ramos] interact, that they shared affection for each other, hugged each other, kissed each other, and [she] observed them speak to each other, [and I.C.] did not appear to be in fear of [Ramos] or repulsed by him[,] and was present for family functions with [Ramos].

N.T., 9/24/21, at 18. The parties also stipulated that Ramos's character witnesses would have testified to his reputation for chastity. *See id*. at 19.

Following the completion of the hearing, the PCRA court took the matter under advisement and, on January 20, 2022, dismissed Ramos's petition. On March 8, 2022, the PCRA court granted Ramos permission to file a notice of appeal *nunc pro tunc*. Ramos timely appealed. *See* Notice of Appeal, 3/10/22. Both Ramos and the PCRA court complied with Pa.R.A.P. 1925.

Ramos raises the following issues for our review:

1. Did the PCRA court err in not finding trial counsel ineffective for failing to object to the introduction of a video of [I.C.] into evidence where the video was not admissible as a prior consistent statement?

2. Was trial counsel also ineffective for failing to request a limiting instruction to inform the jury that it could not consider I.C.'s videorecorded interview as substantive evidence of [Ramos's] guilt?

3. Did the PCRA court err in concluding that trial counsel was not ineffective for failing to investigate [Moya], or call her as a fact witness, where [her] testimony would have impeached testimony [I.C.] gave about his relationship and interactions with [Ramos]?

4. Did the PCRA court err in concluding that trial counsel was not inef[f]ective for failing to present evidence of [Ramos's]

- 4 -

good moral character for chastity and sexual propriety where such evidence likely would have affected the jury's verdict?

5. Did the PCRA court err in not finding that trial counsel was ineffective for failing to request a jury instruction on lack of prompt complaint where [I.C.'s] allegations were made years after the abuse allegedly took place?

Ramos's Brief at 4-5 (unnecessary capitalization omitted).

Our standard of review of an order dismissing a PCRA petition is well-settled:

Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the record in the light most favorable to the prevailing party in the PCRA court. We are bound by any credibility determinations made by the PCRA court where they are supported by the record. However, we review the PCRA court's legal conclusions *de novo*.

*Commonwealth v. Staton*, 184 A.3d 949, 954 (Pa. 2018) (internal citation and quotations omitted). The PCRA petitioner "has the burden to persuade this Court that the PCRA court erred and that such error requires relief." *Commonwealth v. Wholaver*, 177 A.3d 136, 144–45 (Pa. 2018) (internal citations omitted).

In order to be eligible for PCRA relief, the petitioner must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found in Section 9543(a)(2), which includes the ineffective assistance of counsel. *See* 42 Pa.C.S.A § 9543(a)(2)(i); *see also Commonwealth v. Benner*, 147 A.3d 915, 919–

20 (Pa. Super. 2016). To prevail on an ineffectiveness claim, the petitioner has the burden to prove: "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance." *Benner*, 147 A.3d at 920 (internal citations and quotations omitted). The failure to satisfy any of these prongs is fatal to a petitioner's claim. *See id*. Additionally, counsel is presumed effective. *See id*.

Regarding "arguable merit," this Court has provided that, "[t]he first inquiry in an ineffectiveness claim is always whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim." *Commonwealth v. Lott*, 581 A.2d 612, 614 (Pa. Super. 1990) (internal citation and quotations omitted). For the "reasonable basis" prong, the petitioner must show that counsel "had *no* reasonable basis designed to effectuate his client's interests." *Commonwealth v. Lott*, 581 A.2d 612, 614 (Pa. Super. 1990) (emphasis added). We will "conclude that counsel's chosen strategy lacked a reasonable basis only if [the petitioner] proves that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Commonwealth v. Brown*, 161 A.3d 960, 965 (Pa. Super. 2017) (internal citation omitted); *accord*

***Commonwealth v. Koehler***, 36 A.3d 121, 132 (Pa. 2012) (stating that, "[g]enerally, where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests") (internal citations and quotations omitted); ***see also Commonwealth v. Johnson***, 289 A.3d 959, 979 (Pa. 2023) (noting that "a claim of ineffectiveness ordinarily will not succeed through comparing, by hindsight, the trial strategy employed with alternatives not pursued") (internal citation and quotations omitted). Lastly, to establish prejudice, the petitioner "must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction." ***Brown***, 161 A.3d at 965.

In his first issue, Ramos argues trial counsel was ineffective for failing to object to the introduction at trial of a video of I.C.'s forensic interview. According to Ramos, the video was improperly admitted as a prior consistent statement pursuant to Pennsylvania Rule of Evidence 613, which provides that prior consistent statements are admissible to rehabilitate a witness's credibility. ***See*** Ramos's Brief at 14-17 (discussing Pa.R.E. 613(c) and, *inter alia*, ***Commonwealth v. Bond***, 190 A.3d 664, 670 (Pa. Super. 2018) (holding that a forensic interview was improperly admitted pursuant to Pa.R.E. 613(c) because it did not serve to rehabilitate the victim's credibility)). Ramos argues that the video was damaging to his defense because it showed I.C. "visibly

shake, stutter and cry," and thereby corroborated I.C.'s assertions of abuse. Therefore, he argues, trial counsel unreasonably failed to object to it. *See id*. at 18. Ramos also maintains counsel's alleged error prejudiced him because the entire case boiled down to I.C.'s credibility. *See id*. at 18-19.

The PCRA court considered Ramos's arguments and determined they merit no relief:

> [Ramos] has not carried his burden with respect to the second prong of the test, and therefore is not entitled to PCRA relief. Defense counsel is afforded broad discretion to determine tactics and strategy. The record reflects that trial counsel did not object to [I.C.'s] interview because it supported [Ramos's] defense. Trial counsel himself made use of the interview on several occasions to cast doubt on [I.C.'s] credibility, specifically by exposing inconsistencies between [I.C.'s] interview and his trial testimony. Using the interview as an impeachment tool was certainly a reasonable strategy, especially since [Ramos] did not take the stand[,] and their available defenses were limited. Therefore, this claim is meritless because trial counsel had a reasonable basis for not objecting to the admission of the interview, that being, to help him challenge [I.C.'s] credibility.

PCRA Court Opinion, 6/17/22, at 4-5 (internal citations, quotations, and footnote omitted).

Following our review, we conclude the PCRA court's findings are supported by the record and its legal conclusions error-free. Regardless of whether an objection to the video would have had merit, trial counsel testified at the PCRA evidentiary hearing that he used the video to impeach I.C., which was part of his strategy, because I.C. "exaggerate[d] the allegations against [Ramos at trial,]" as evinced by the additional details in I.C.'s trial testimony that were omitted from his forensic interview. *See* N.T., 9/24/21, at 7-8. The

trial testimony shows that counsel impeached I.C. with his statements at trial which were inconsistent with or not contained in his forensic interview. **See**, **e.g.**, N.T., 7/19/21, at 120 (trial counsel questioning I.C. about whether he told the forensic interviewer about the oral and attempted anal sex with Ramos that he testified to at trial, and I.C. conceding, "I mean, I didn't say that before"); **see also id**. at 35 (trial counsel, in his opening statement, arguing to the jury that, *inter alia*, "how [I.C.] answers the questions . . ., the [forensic] interview. . . . [I]t all adds up to one conclusion. . . . He's not telling the truth"); **see also** N.T., 7/23/21, at 29, 32 (trial counsel, during closing, highlighting inconsistencies between the video and trial testimony, including whether other people would have been at the scrap yard at night when Ramos abused I.C., and arguing, "None of it adds up. None of it comports with what [I.C.] said in that . . . video because it did not happen"). Because Ramos has failed to show that counsel had **no** reasonable basis designed to effect Ramos's interests, he has failed to satisfy the second prong of the ineffectiveness test, which is fatal to his claim. **See Lott**, 581 A.2d at 614; **see also Commonwealth v. Reed**, 42 A.3d 314, 325 (Pa. Super. 2012) (concluding that, "[a]s in many child sexual abuse cases, this matter came down to credibility . . .. [C]ounsel's . . . strategy of attempting to destroy the victim's credibility by highlighting various inconsistencies between . . . her prior statements . . . and her trial testimony[] was a sound one," and whether it resulted in an acquittal "is not the issue").

In his second issue, Ramos argues trial counsel was ineffective for failing to request from the trial court a limiting instruction for the video to the effect that it could not be used as substantive evidence of his guilt. **See** Ramos's Brief at 20. Ramos argues that, pursuant to Pennsylvania Rule of Evidence 613(c), the forensic interview video could only be admitted as rehabilitative evidence, not substantive evidence, and, because trial counsel failed to request a limiting instruction, the jury received the video, which it could have used as substantive evidence to convict him. **See id**. at 23. Ramos maintains that, because "all of the Commonwealth's evidence related to I.C.'s disclosure of the abuse," the evidence was "hardly overwhelming." **Id**. Therefore, he argues, "it cannot be said that the court's failure to instruct the jury on how to consider [the] interview did not contribute to the jury's finding of guilt." **Id**. Accordingly, Ramos asserts, he has suffered prejudice from counsel's omission. **Id**.

The PCRA court considered this issue and concluded it warrants no relief:

> The standard jury instruction for this type of evidence begins by stating "you have heard evidence that [the victim] made a statement on an earlier occasion that was consistent with [his] testimony." *Pa. Suggested Standard Crim. Jury Instructions § 4.08C*. However, as explained above, counsel's strategy was to expose the **inconsistencies** between [I.C.'s] interview and his trial testimony. Thus, it was objectively reasonable for counsel not to request this instruction, as doing so would accomplish the exact opposite by instructing the jury that [I.C.'s] interview was **consistent** with his trial testimony.

PCRA Court Opinion, 6/17/22, at 5 (brackets and emphasis in original; citations to the record omitted).

- 10 -

The PCRA court's findings of fact are again supported by the record and its legal conclusions free of error. Trial counsel testified at the evidentiary hearing that he did not request the limiting instruction because, "I didn't think that the . . . interview was consistent with the trial testimony . . .." N.T., 9/24/21, at 9. The PCRA court correctly noted that the jury instruction Ramos maintains trial counsel should have requested begins with a declaration that "[y]ou have heard evidence that [the witness] made a statement on an earlier occasion that was consistent with [his] testimony." Pa. SSJI (Crim), § 4.08C. This instruction would have undermined trial counsel's stated strategy, which was, as discussed *supra*, to show that the video was an *inconsistent* statement and, accordingly, evidence that I.C. had fabricated the abuse allegations. *See*, *e.g.*, *Commonwealth v. Lawrence*, 165 A.3d 34, 44 (Pa. Super. 2017) (noting that "[i]t is well settled that whether to request additional points for charge is one of the tactical decisions within the exclusive province of counsel. We should not invade that province and declare counsel ineffective if any reasonable basis for counsel's decision existed at the time of trial") (internal citations and quotations omitted). Because Ramos has again failed to show counsel lacked a reasonable basis for declining to request the limiting instruction, Ramos is due no relief.

In his third and fourth issues—which we address together because they both concern allegations of trial counsel's ineffectiveness for failing to elicit certain testimony from defense witnesses who testified—Ramos argues trial

counsel was ineffective for failing to examine defense witness Moya about her observations of I.C. and Ramos at the family function in Connecticut, specifically, that I.C. did not seem to be afraid or distrustful of Ramos following the abuse. Ramos additionally argues that trial counsel was ineffective for failing to elicit testimony from his character witnesses at trial about his reputation for chastity and sexual propriety. The relevant law is as follows: A criminal defendant may offer evidence of a pertinent character trait as substantive evidence that the defendant did not commit a charged crime. *See* Pa.R.E. 404(a)(2)(A). "Evidence of good character is substantive and positive evidence, not a mere make weight to be considered in a doubtful case," and "is an independent factor which may of itself engender reasonable doubt or produce a conclusion of innocence." *Commonwealth v. Goodmond*, 190 A.3d 1197, 1201 (Pa. Super. 2018) (internal citation omitted).

However, "[t]he failure to call character witnesses does not constitute *per se* ineffectiveness." *Commonwealth v. Treiber*, 121 A.3d 435, 498 (Pa. 2015). To establish that trial counsel was ineffective for failing to call a witness, a PCRA petition must prove:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Medina*, 209 A.3d 992, 998 (Pa. Super. 2019) (internal citation omitted). Trial counsel will not be deemed ineffective for failing to call

- 12 -

a witness to present cumulative testimony. *See*, *e.g.*, *Commonwealth v. Neal*, 713 A.3d 657, 663 (Pa. Super. 1998); *see also Commonwealth v. Milligan*, 693 A.2d 1313, 1319 (Pa. Super. 1997).

Ramos argues that Moya's observations of I.C. and Ramos in Connecticut contradicted I.C.'s and his mother's account according to which I.C. avoided Ramos at a family function. *See* Ramos's Brief at 24. Ramos asserts that Moya would have testified that I.C. did not appear fearful and distrustful of him notwithstanding the earlier abuse. *See id*. This, Ramos maintains, would have undermined I.C.'s credibility. *See id*. at 26. Ramos additionally argues that trial counsel was ineffective for failing to elicit testimony from his character witnesses about his reputation for chastity and sexual propriety, because "those traits were most probative on the issue of whether [he] could have sexually assaulted I.C." *Id*. at 27.

The PCRA court considered these issues and determined they merit no relief because Ramos has failed to establish prejudice:

> [Ramos] claims that, if specifically questioned, [Moya] would have testified that [I.C.] "exhibited no fear or apprehension" around [Ramos] when he visited [I.C.'s] home [in Connecticut] in 2016. However, [Ramos] did not proffer any evidence that he was prejudiced in the absence of said [] testimony. The record indicates that it is not reasonably likely that the outcome of the trial would have been different if only [Ramos's] sister had testified about whether [I.C.] seemed nervous, especially considering her obvious bias towards [Ramos], her brother. . . ..

\* \* \* \*

At trial, counsel called [Ramos's brother and] sister[], . . . as well as his nieces, . . . each of whom testified that [Ramos] had a reputation for being a peaceful and law-abiding citizen. Any testimony about his reputation for chastity and sexual propriety would therefore be cumulative and not reasonably likely to result in a verdict more worthy of confidence. . . ..

PCRA Court Opinion, 6/17/22, at 8-9. The Commonwealth additionally argues that I.C. did not testify that, while in Connecticut, "he was afraid of [Ramos] or that he visibly manifested any repulsion toward [Ramos] while he was there," and, accordingly, Moya's "proposed testimony would not have contradicted or undermined [I.C.'s] testimony." Commonwealth's Brief at 21-22.

Following our review, we discern no error in the PCRA court's ruling. In Connecticut, when Ramos and his family members visited in January 2016 for a family funeral, I.C. testified that Ramos "kept his distance away from me," and that I.C. did not want to "be near" the "whole family." N.T., 7/19/18, at 90. I.C. said he "barely spoke" to Ramos, but they did say to each other, "Hey. What's up? You know, I haven't seen you in forever." *See id*. at 91. Seeing Ramos again in 2016 prompted I.C. to tell his boyfriend about the prior abuse, which precipitated I.C. telling his mother. *See id*. at 91, 105. As the Commonwealth correctly noted, I.C. did not testify that he felt or manifested fear or revulsion during his interaction with Ramos. Accordingly, Moya's proposed testimony that I.C. seemed comfortable around Ramos is not inconsistent with I.C.'s such that the absence of her testimony on this point denied Ramos a fair trial. Additionally, Ramos presented at trial testimony by

- 14 -

his brother, sister, and two nieces, each of whom testified to his reputation in the community for being "peaceable, nonviolent, [and] ***law-abiding***." ***See*** N.T., 7/23/18 at 9-18 (emphasis added). Because Ramos presented testimony by four character witnesses as to his reputation in the community for being law abiding, and a person who is law abiding would not commit an illegal sexual offense against a minor, we conclude that Ramos has failed to establish prejudice such that the outcome of his trial would be different had his character witnesses also added that he has a reputation for chastity and sexual propriety. ***See***, ***e.g.***, ***Commonwealth v. Montalvo***, 986 A.2d 84, 103 (Pa. 2009) (holding that character evidence establishing the defendant's "law-abiding" reputation was "sufficient to address his reputation for peacefulness and non-violence"); ***cf. Commonwealth v. Weiss***, 606 A.2d 439, 442-43 (Pa. 1992) (failure to call ***any*** character witnesses in a case that boiled down to credibility was ineffective assistance of counsel); ***Commonwealth v. Hull***, 982 A.2d 1020 (Pa. Super. 2009) (holding the same).

Lastly, in his fifth issue, Ramos argues trial counsel was ineffective for failing to request a prompt complaint jury instruction. This Court has explained that the prompt complaint instruction provides, in pertinent part,

> that evidence of "delay in making a complaint does not necessarily make [the victim's] testimony unreliable, but may remove from it the assurance of reliability accompanying the prompt complaint or outcry that the victim of a crime such as this would ordinarily be expected to make." *Pennsylvania Suggested Standard Criminal Jury Instructions* [§] 4.13A(2). The instruction further states that

the failure to promptly complain and the victim's explanation for the failure "are factors bearing on the believability of [the victim's testimony] and must be considered by you in light of all the evidence in the case." *Id.*[] at (3).

*Commonwealth v. Sandusky*, 77 A.3d 663, 668 (Pa. Super. 2013).

Additionally:

The premise for the prompt complaint instruction is that a victim of a sexual assault would reveal at the first available opportunity that an assault occurred. The instruction permits a jury to call into question a complainant's credibility when he or she did not complain at the first available opportunity. However, there is no policy in our jurisprudence that the instruction be given in every case.

The propriety of a prompt complaint instruction is determined on a case-by-case basis pursuant to a subjective standard based upon the age and condition of the victim. For instance, **where an assault is of such a nature that the minor victim may not have appreciated the offensive nature of the conduct, the lack of a prompt complaint would not necessarily justify an inference of fabrication**.

*Id*. at 667 (internal citations, quotations, and brackets omitted; emphasis added). The age and the maturity of the victim should be considered in evaluating whether the instruction is appropriate. **See id**. at 668. Additionally,

[w]here no physical force is used to accomplish the reprehensible assault, a child victim would have no reason to promptly complain of the wrong-doing, particularly where the person involved is in a position of confidence. Where such an encounter is of a nature that a minor victim may not appreciate the offensive nature of the conduct, the lack of a complaint would not necessarily justify an inference of a fabrication.

*Commonwealth v. Snoke*, 580 A.2d 295, 299 (Pa. 1990).

- 16 -

Ramos argues that trial counsel was ineffective for failing to request this jury instruction because I.C.'s "testimony at trial suggested that although he was only seven or eight [] years['] old when the abuse started, he appreciated the offensive nature of [Ramos's] conduct, but nonetheless remained silent because he did not want to upset his mother . . .." Ramos's Brief at 31; *see also id*. at 33 (Ramos arguing that I.C.'s trial testimony suggested that he wanted to "protect his mother" from the "devastating impact" of his disclosure). Ramos argues that because the Commonwealth's case hinged on I.C.'s credibility, the lack of a jury instruction that would have informed the jury of a basis for "discounting his credibility" prejudiced him so as to affect the outcome of the trial. *See id*. at 35.

The PCRA court considered Ramos's final issue and determined it merited no relief:

> [I.C.] was just seven or eight years old when [Ramos] began abusing him. As [I.C.] explained at trial, "[he] felt like it wasn't right for [him] to tell on [his] friend, [Ramos,]" and then, once he was old enough to fully understand that [Ramos's] actions were wrong, he hesitated to tell his mother because he was afraid for her health. . . . Since [I.C.] had a reasonable explanation for his delay, trial counsel was not ineffective for failing to request a prompt complaint jury instruction. Further, trial counsel testified at the evidentiary hearing that he made a strategic choice not to ask for the prompt complaint instruction because of its potential to highlight the issue to the jury and help the Commonwealth's case, rather than undercut it. This strategy was objectively reasonable . . ..

PCRA Court Opinion, 6/17/22, at 10 (internal citation omitted).

- 17 -

Following our review, we conclude the PCRA court's findings are supported by the record and its legal conclusions are sound. I.C. testified that the abuse began when he was seven or eight years' old, and occurred against a background of I.C. and Ramos, his uncle, going to Wawa for milkshakes and playing video games. *See* N.T., 7/19/18, at 68. When Ramos kissed I.C. at the beginning of the pattern of abuse, Ramos told I.C. not to tell anyone, that it was "top secret," and that they were friends, and, therefore, I.C. could not tell on him. *See id*. at 70. I.C. further explained he thought, "I can't just tell on him. He said to keep it a secret. I was young at the time, so I felt like it wasn't right for me to tell on my friend." *Id*. at 72. I.C. also explained that, following encounters when they smoked marijuana together and watched gay pornography, and I.C. assented because he did not want to "let my friend down." *Id*. at 78. I.C. explained he did not call his mother and disclose the abuse because he was "afraid if I call, [*i.e.*, disclose,] my friend[, *i.e.*, Ramos,] is going to get mad at me." *Id*. at 80. As the abuse further escalated physically, I.C. explained he also did not want to tell his mother because she trusted Ramos and I.C. did not want her to lose her best friend. *See id*. at 83. In 2010, when I.C. was nine years' old, he and his nuclear family moved from Philadelphia to Connecticut. *See id*. at 87-88. After seeing Ramos again six years later in Connecticut in 2016, for his grandmother's funeral, I.C. recalled his experiences with Ramos, discussed them with his boyfriend, and thereafter, concluded he had to disclose. *See id*. at 91.

Trial counsel testified at the PCRA evidentiary hearing that he was familiar with the prompt complaint instruction. *See* N.T., 9/24/21, at 11. Trial counsel made the strategic decision not to request the instruction because he believed it could be helpful to the Commonwealth. *See id*. at 12. Counsel explained, "[U]nder the circumstances of this case . . . in my mind, it just highlights it," *i.e.*, that I.C. did not disclose until later, "which, in my opinion, [was] not the best for a jury to hear. It gives them explanations." *Id*. In essence, trial counsel concluded the prompt complaint instruction would highlight the issue for the jury and give them potential explanations for why I.C. did not disclose until he was older. Given the sympathetic reasons I.C. provided for why he did not disclose the abuse contemporaneously (*i.e.*, because Ramos convinced him they were friends and the abuse was "top secret," and that as his friend, I.C. could not tell on him), it cannot be said that trial counsel lacked a reasonable basis for declining to further highlight this issue for the jury via a jury instruction with questionable relevance. *See Lawrence*, 165 A.3d at 44 (noting that "whether to request additional points for charge is one of the tactical decisions within the exclusive province of counsel. We should not invade that province and declare counsel ineffective if any reasonable basis for counsel's decision existed at the time of trial"); *see also Snoke*, 580 A.2d at 299 (stating that "[w]here no physical force is used to accomplish the reprehensible assault, a child victim would have no reason to promptly complain of the wrong-doing"). Because Ramos has failed to show

that counsel lacked an objectively reasonable basis calculated to advance his interests, Ramos's final issue merits no relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: October 25, 2023